DARROW et al. v. H. R. HORNE PRODUCE CO.

(Circuit Court, D. Indiana. September 16, 1893.)

No. 8,880.

1. PRINCIPAL AND AGENT—ACTION BY UNDISCLOSED PRINCIPAL.
An undisclosed principal may maintain an action upon a written contract made by his agent with the agent of another, in their own names, as against the latter's undisclosed principal, where the contract itself does not contain recitals or description inconsistent with the existence of the relation of principal and agent. Humble v. Hunter, 12 Q. B. 310; Schmaltz v. Avery, 16 Q. B. 655, distinguished.

2. EVIDENCE—VARYING WRITTEN INSTRUMENT.
Parol evidence that such undisclosed principals were the real parties in interest does not vary or contradict the writing, and is therefore admissible.

3. PLEADING—WHAT MAY BE RAISED BY DEMURRER.
Whether the charter and by-laws of a defendant corporation prevent it from contracting except under seal will not be considered upon demurrer to a complaint, where by the complaint it does not appear but that defendant might contract by parol.

At Law. Action by Marcus H. Darrow and others against the H. R. Horne Produce Company upon a contract for a sale of butter. Defendant's demurrer to the complaint overruled.

Baker & Daniels, for plaintiffs.
Theodore Shockney, for defendant.

BAKER, District Judge. The question of the sufficiency of the complaint is raised by demurrer. The complaint, so far as material to the decision of the question involved, is as follows: That heretofore, the 21st day of January, 1893, the plaintiffs, at Chicago, Ill., sold to the defendant, through its agent and general manager, William Harris, a quantity of butter, as mentioned in the contract of sale and purchase thereof, which contract was and is in writing; that said contract, although made for and on account of these plaintiffs on the one hand, and for and on account of the defendant upon the other hand, was executed only in the names of the said respective agents, A. A. Kennard & Co., for these plaintiffs, and in the name of the said William Harris, by the style of Wm. Harris, for the defendant, but as matter of fact each of said

agents thereby intended to bind his said principal thereby, and each of said agents was thereunto duly authorized by his said principal. The contract of sale and purchase reads as follows:

"Chicago, Ill., Jan. 21, '93.

"We have this day sold to Wm. Harris the following lots of butter, [describing 14 lots. The contract then proceeds:] It being understood that these figures are an approximation only, and there may be a few packages, more or less, of each mark. The price for the 1,771 tubs is to be 19¼ cents; 300 firkins, 20 cents. Also about 200 tubs of creamery butter, marked Ⓚ, at 22¾ cents, and 200 tubs of ladle butter, marked Ⓘ, at 16¼ cents. One car load out of the above-mentioned butter is to be moved and paid for on Tuesday, the 24th inst., and the balance of the lot is to be moved and paid for within thirty days from this date; payment to be made when the butter is shipped. Goods to be kept insured by A. A. Kennard & Co.

[Signed]                                                     "Wm. Harris.
                                                             "A. A. Kennard & Co."

In argument, two objections are pointed out:

(1) "That, if said agency existed as alleged, it does not appear by said contract that either the plaintiffs or the defendant were made parties thereto; and by reason of the fact that said contract between A. A. Kennard & Co. and William Harris does not disclose that the plaintiffs were principals, nor was said fact disclosed by said A. A. Kennard & Co., the plaintiffs are not proper parties to bring this action, and A. A. Kennard & Co. are the only parties who can maintain an action on said contract."

(2) "That the defendant is a corporation incorporated under and by virtue of the laws of the state of Indiana, and by the provisions of her charter and by-laws cannot contract except under her seal."

In support of the first proposition counsel cite and rely upon Story on Contracts, (section 267,) as follows:

"Ordinarily the right of the agent to sue is subordinated to that of the principal, and may be superseded or extinguished at any time by his intervention. Any defense which would be sufficient to defeat a suit, if brought by the principal, will also be competent against the agent; but if a written contract be made exclusively with the agent, who expressly states himself to be principal, the real principal would not be entitled to maintain an action thereupon by showing that the professed principal was merely his agent."

The cases cited by the author in support of the last proposition which alone can be claimed to have any application here are Humble v. Hunter, 12 Q. B. 310, 64 E. C. L. 309, and Schmaltz v. Avery, 16 Q. B. 655, 3 Eng. Law & Eq. 391.

The first case is based on a charter party of affreightment alleged to have been made between the "plaintiff, then and still the owner of the good ship," etc., and the defendant. On the trial, when the charter party was read in evidence, it appeared upon its face that it was not made by or in the name of the plaintiff, but was made by and in the name of her son, as "owner of the good ship," etc., and the defendant. It was claimed that, as the plaintiff's name was not mentioned in the contract, and as it did not show that there was any principal, it could be shown by parol who the undisclosed principal was. But as the contract in terms recited that the party signing was "the owner of the good ship," etc., it was held that it recited a fact which made the existence of an undisclosed principal inconsistent with the truth of the fact so recited, and that, therefore, the son could not be heard to testify that in making the con-

tract he acted as agent for the plaintiff, his mother, who was the real owner of the ship. In affirming the ruling of the trial court in excluding the offered testimony, Patteson, J., observed:

"The question in this case turns on the form of the contract. If the contract had been made in the son's name merely, without more, it might have been 'shown that he was agent only, and the plaintiff was the principal. * * * In this case I was at first in the plaintiff's favor on account of the general principle referred to by my lord, but the form of the contract takes the case out of that principle."

Wightman, J., thought at the trial that the case was governed by Skinner v. Stocks, 4 Barn. & Ald. 437. He further said:

"But neither in that nor in any case of the kind did the contracting party give himself any special description, or make any assertion of title to the subject-matter of the contract. Here the agent describes himself expressly as 'owner' of the subject-matter. This brings the case within the principle of Lucas v. De La Cour, 1 Maule & S. 249, and the American authorities cited."

In the case of Schmaltz v. Avery, supra, a similar contract was involved. In it, it was expressed to be made between the "defendant, as owner of the ship, of the one part, and Schmaltz & Co., agents of the affreighter, of the other part." At the end of the charter party there was this memorandum: "This charter being concluded on behalf of another party, it is agreed that all responsibility on the part of G. Schmaltz & Co. shall cease as soon as the cargo is shipped." In the declaration no notice was taken of this memorandum. In other respects the agreement set out corresponded with that proved. Oral evidence was given that the plaintiff was in truth the principal. The court remarked that:

"The question raised on the plea of nonassumpsit is whether the action will lie at the suit of the present plaintiff. The charter party in terms states that it is made by G. Schmaltz & Co. as agents for the plaintiff. It then states the terms of the contract, and concludes with these words: 'This charter being concluded on behalf of another party, it is agreed that all responsibility on the part of Schmaltz & Co. shall cease as soon as the cargo is shipped.' The declaration treats the charter party as made between the plaintiff and defendant, without mentioning the character of the plaintiff as agent, and without any reference to the concluding clause, thereby treating the plaintiff as principal in the contract. At the trial it was proved that the plaintiff was in point of fact the real freighter. * * * It was objected that the proof that the plaintiff was the real freighter or principal, and not, as stated in the contract, only the agent, was a departure; and a verdict was found for the defendant, with liberty to enter a verdict for the plaintiff if the court should be of opinion that he was entitled to sue as principal notwithstanding the terms of the charter party; and a rule nisi was obtained so to enter it. The court held that the rule should be made absolute."

In so holding it was said:

"It is conceded that if there had been a third party, who was the real freighter, such party might have sued although his name was not disclosed in the charter party. But the question is whether the plaintiff can fill both characters of agent and principal, or whether he can repudiate that of agent and adopt that of principal,"

—And it was held that he could not do so, as that would be to contradict an express recital of the charter party. It is thus apparent that neither the text of Story nor the cases cited support

the defendant's contention, but, on the contrary, each is an authority against him. The other cases cited and relied upon by him do not justify review, as they yield no support to his argument. It is undoubtedly true that parol testimony will not be permitted to control or contradict a contract in writing; but, in the absence of any recital appearing therein, it in no just sense contradicts the written contract to show by oral testimony, aliunde the writing, that the names signed to the contract are those of agents, and that undisclosed principals are the real parties in interest. Counsel has cited cases touching the rule applicable to sealed instruments. It is unnecessary to examine those cases, because the writing here declared on is a simple contract, not under seal.

A further review of the adjudged cases is unnecessary, as the true doctrine is found accurately stated in the elementary books. Story, Ag. (4th Ed.) § 1600, states the doctrine in these words:

"Indeed, the doctrine maintained in the more recent authorities is of a far more comprehensive extent. It is that, if the agent possesses due authority to make a written contract not under seal, and he makes it in his own name, whether he describes himself to be agent or not, and whether the principal be known or unknown, he, the agent, will be liable to be sued, and be entitled to sue thereon, and his principal also will be liable to be sued and be entitled to sue thereon, in all cases, unless from the attendant circumstances it is clearly manifested that an exclusive credit is given to the agent, and it is intended by both parties that no resort shall in any event be had by or against the principal upon it. The doctrine thus asserted has this title to commendation and support: that it not only furnishes a sound rule for the exposition of contracts, but that it proceeds upon a principle of reciprocity, and gives to the other contracting party the same rights and remedies against the agent and principal which they possess against him."

Nor does this doctrine contradict or vary the written instrument. The same writer observes:

"It does not deny that it is binding on those whom on the face of it it purports to bind, but shows that it also binds another by reason that the act of the agent in signing the agreement in pursuance of his authority is in law the act of the principal."

Higgins v. Senoir, 8 Mees. & W. 834, 845, and other cases cited under the above section.

Whart. Ag. § 298, states the doctrine thus:

"On nonnegotiable instruments, where the agent is prima facie the contracting party, unless it should appear that the agent is the person exclusively privileged or bound, the principal can sue or be sued, and in the latter case the contracting party can sue either principal or agent."

Mechem, Ag. §§ 695–700, discusses the subject of the liability of undisclosed principals, and of principals known, but not mentioned in contracts executed on their account, but signed by the agent alone, and he shows that in such cases, unless the principal in the mean time has in good faith paid the agent supposing he was the principal, the other party may overpass the agent, and sue the principal in the first instance. In section 701 he says:

"This rule applies to all simple contracts, whether written or unwritten, entered into by an agent in his own name and within the scope of his authority, although the name of the principal does not appear in the instrument,

and was not disclosed, and although the party dealing with the agent supposed that the latter was acting for himself. And this rule obtains as well in respect to contracts which are required to be in writing as those to whose validity writing is not essential. It does not violate the principle which forbids the contradiction of a written agreement by parol evidence, nor that which forbids the discharging of a party by parol from the obligation of his written contract. The writing is not contradicted, nor is the agent discharged; the result is merely that an additional party is made liable."

"Whatever the original merits of the rule," says the court in Byington v. Simpson, 134 Mass. 169, "that a party not mentioned in a simple contract in writing may be charged as a principal upon oral evidence, even when the writing gives no indication of an intent to bind any other person than the signer, we cannot reopen it, for it is as well settled as any part of the law of agency."

These authorities demonstrate that the first contention of the defendant is untenable..

The second objection urged by him is not at present in the record. Whether the charter and by-laws of the defendant prevent it from contracting except under seal nowhere appears except in the demurrer. For aught appearing in the complaint, the defendant has ample power to contract by parol. It will be time enough to consider the question when properly raised upon the record. It follows that the demurrer must be overruled, and it is so ordered.