## McFARLANE v. WADHAMS.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

No. 1,560.

1. GUARANTY (§ 2\*)—LAW GOVERNING—PLACE OF CONTRACT.

Where defendant wrote from Milwaukee, offering to become guarantor of a contract by which plaintiff was to furnish certain machinery to a corporation, which offer was accepted by letter addressed to defendant at Milwaukee, the contract of guaranty was a Wisconsin contract, and governed by the laws of that state.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 29; Dec. Dig. § 2.\*]

2. FRAUDS, STATUTE OF (§ 108\*)—CONSTRUCTION—CONTRACT OF GUARANTY.

The statute of frauds of Wisconsin, which provides that an agreement to answer for the debt of another shall be void, unless "such agreement or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged therewith," does not require that the consideration shall be expressed in the main document or agreement, nor that it shall be stated in express terms; but it is sufficient if it appear by necessary inference from the terms of the writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 216–218; Dec. Dig. § 108.\*]

3. FRAUDS, STATUTE OF (§ 108\*)—SUFFICIENCY OF WRITING—STATEMENT OF CONSIDERATION.

Plaintiff contracted to build certain machinery for a corporation of which defendant was a stockholder; the contract containing no provision as to the terms of payment. While the contract was still executory, defendant, with full knowledge of the facts, wrote plaintiff, asking for certain terms of credit for the company, and offering to guarantee the bill, and plaintiff answered, acceding to the terms, and accepting the guaranty. Held, that the correspondence clearly disclosed by inference a good and valuable consideration for the guaranty, within the statute of frauds of Wisconsin requiring such consideration to be expressed in some written note or memorandum signed by the party to be charged, and that the guaranty was valid and enforceable.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 216–218; Dec. Dig. § 108.\*

Sufficiency of expression of consideration in memorandum within statute of frauds, see note to Choate v. Hoogstraat, 46 C. C. A. 183.]

4. GUARANTY (§ 61\*)—DISCHARGE OF GUARANTOR—ACCEPTANCE OF NOTE BY CREDITOR.

A guarantor of the debt of another is not discharged from liability by the acceptance by the creditor of a note for the debt signed by both principal and guarantor; but the creditor may surrender such note and sue on the contract of guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 71; Dec. Dig. § 61.\*]

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

Action by Peter McFarlane against E. A. Wadhams. Judgment for defendant (165 Fed. 987), and plaintiff brings error. Reversed.

Plaintiff in error, hereinafter termed plaintiff, a citizen and resident of the state of Colorado, brought this action against defendant in error, hereinafter termed defendant, doing business as a sole trader under the name and style of McFarlane & Co., a citizen and resident of the state of Wisconsin, to re-

cover a balance due for the iron work for a stamp mill made for and delivered to the Milwaukee Leasing Company at Denver, Colo. The allegations of the complaint are as follows, viz.:

On May 5, 1906, plaintiff, on request of one Tarbet, general superintendent of said Milwaukee Leasing Company, theretofore preferred, made by letter to said Tarbet, as such superintendent, a proposition to supply the iron work for a 20-stamp long-drop, Gilpin county type mill, at a cost of $2,930, f. o. b. cars at Denver, Colo. Thereafter, and on May 14, 1906, the defendant, who was at the time one of the principal officers and the principal stockholder of said Milwaukee Leasing Company, telegraphed plaintiff: "Commence work on the stamp mills as per specifications." On the same day defendant wrote plaintiff from Milwaukee, Wis.: "I wired to-day to commence work on the stamp mills. This refers to the 20 stamps according to the specifications sent Mr. Tarbet." On May 17th thereafter plaintiff sent the following letter to Tarbet at Milford, Utah, at which place said Milwaukee Leasing Company was engaged in the mining business, viz.:

"Dear Sir: We received on the 14th a telegram from Mr. E. A. Wadhams to commence work on mill, which we immediately did. To-day we got Mr. Wadhams' letter confirming the telegram, and we are now hard at work filling the order and hope to ship within the specified time. In a few days we will have foundation plans, ready for mailing to you. In regard to payments, there has been nothing said thus far about that part of it, and I ask you to kindly write me and state how you would like to meet them. We would prefer to have some one man of your company, yourself or Mr. Wadhams, to become personally responsible. We ask this because we do not know anything about your organization or company; but we will await your letter of advice in regard to this before saying anything to Mr. Wadhams.
"Very truly yours,                                    McFarlane & Co."

To this letter the defendant, on May 26, 1906, writing from Milwaukee, replied as follows, viz.:

"Gentlemen: I am in receipt of your letter of May 17th, to Mr. Tarbet, at Milford. I note your remarks in regard to payment. The mill we purchased of the Power Mining Mach'y Co. we paid for some few weeks after the mill was in operation; i. e., two or three. We imagine that payments in that time for your mill would be satisfactory. I will say that I will personally guarantee the payment of this bill by the Milwaukee Leasing Company. Trusting this will be satisfactory and that you will make as early shipment as possible, I remain.     Yours truly,                          E. A. Wadhams.
"E. A. W.—L."

Thereafter, on May 28, 1906, the plaintiff sent to defendant, at Milwaukee, Wis., the following letter, viz.:

"Dear Sir: We have yours of the 26th inst. in regard to the payments of your 20-stamp mill for Milford. We will say in reply that we note that you will personally guarantee the payments on contract, and we thank you for that favor; but we think the time you require is too long, as it may take from two to three months to erect the mill ready to run after it is on the ground. We do not object seriously to your proposition, but we think we are entitled to $1,000 on account on receipt by you of invoice and bill of lading showing whole shipment. Trusting you may see your way clear to pay us that $1,000 at that time, we are,
"Very truly yours,                                    McFarlane & Co."

The receipt by the respective parties hereto, respectively, of the telegram and letters above set out in due course of mail, is conceded. The complaint further alleges that the guaranty of defendant so made was accepted. It further alleges on information and belief that the contract so made was a Colorado contract; that, whether a Colorado or a Wisconsin contract of guaranty, it was valid. It is further stated that thereafter, and in pursuance of the said order and guaranty so made by defendant, plaintiff manufactured and delivered said iron work to the Milwaukee Leasing Company as agreed, and thereafter, on or about July 1, 1906, sent to defendant an invoice or bill for said sum of $2,930 as per his contract; that on July 14, 1906, defendant wrote to plaintiff acknowledging the receipt of the letter last named and saying: "I

received a letter from Mr. Tarbet saying the mill has arrived and apparently all right. As soon as he checks up, will either send you some money on account, or send you paper you can use; possibly both." It is further alleged that thereafter, on September 12, 1906, the defendant wrote plaintiff inclosing a check or draft for $475, being $430 on account of the purchase price and $45 interest, and two notes, signed by said Milwaukee Leasing Company, each indorsed by defendant, one for $1,000 for three months, and the other for $1,500 for four months. It is further alleged that said notes were respectively renewed from time to time; that the last renewal of the $1,000 note was under date of March 15, 1907, and of the $1,500 note, on January 15, 1907; that neither of said notes, nor any part thereof, has been paid; that there is now due and owing on the purchase price for said machinery, the sum of $2,500, with interest on said $1,000 from March 15, 1907, and on said $1,500, from January 15, 1907; and that payment thereof has been demanded and refused. Wherefore he brings suit, etc.

To this complaint defendant filed his demurrer, which was sustained by the Circuit Court. No amendment having been made to the complaint, the same was on November 4, 1908, on defendant's motion, dismissed, and judgment for costs rendered. Whereupon, in due season, plaintiff sued out the writ of error upon which said cause is now before this court. The only error assigned is that the court erred in sustaining the demurrer.

Jackson B. Kemper, for plaintiff in error.
J. H. Marshutz, for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The contract here in suit is a Wisconsin contract. After giving his terms, and acceptance thereof by defendant, plaintiff awoke to the fact that nothing had been said about time and manner of payment, and thereupon, on May 17, 1906, wrote Tarbet, whom he knew to be general superintendent of the Milwaukee Leasing Company, to state how the same were to be met, and to have the payment assumed by Tarbet or defendant, as he did not know anything about the Milwaukee Leasing Company. To this letter defendant replied from Milwaukee, giving two or three weeks after the mill was installed and put in operation as time for payment, and adding, "I will say that I will personally guarantee the payment of this bill by the Milwaukee Leasing Company," thus complying with plaintiff's request as to payment and guaranty. To this plaintiff replied, thanking defendant for that favor, and, while not objecting seriously to the time of payment, stating that he thought the time too long, and that he would be entitled to receive $1,000 when whole shipment was shown, and adding, "Trusting you may see your way clear to pay us that $1,000 at that time," etc., clearly thus accepting the terms of defendant's letter, and asking for the favor of an earlier payment of $1,000. This request was in no way a condition imposed, but simply an appeal for the anticipation of the agreed time of payment. It is therefore apparent that the agreement was perfected at Milwaukee, and is, therefore, subject to the laws of Wisconsin. Davis v. Wells, 104 U. S. 159, 26 L. Ed. 686.

The Wisconsin statutes require that an agreement to become liable for the debt of another shall be void unless "such agreement or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged therewith." For the defendant it is insisted that the facts at bar fail to take the case out of the statute, for the reason that the consideration is not, as defendant

claims, expressed in a writing signed by defendant. It will be observed that the statute does not in terms require that the consideration shall be expressed in the main document or agreement, but that it must appear "in some note or memorandum thereof" subscribed by the party charged therewith. Singleton v. Hill, 91 Wis. 51, 64 N. W. 588, 51 Am. St. Rep. 868. Nor is it necessary that the consideration for the undertaking should be stated in express terms. It is sufficient if it appear by necessary inference from the terms of the writings. Houghton v. Ely, 26 Wis. 181, 7 Am. Rep. 52; Miami Co. Nat. Bank v. Goldberg, 133 Wis. 175, 113 N. W. 391, 15 L. R. A. (N. S.) 1115, 126 Am. St. Rep. 967.

Since, in the present instance, no consideration is in terms expressed in the agreement of guaranty, it becomes necessary to consider all the facts, as disclosed in the correspondence, which are relied upon by plaintiff to make a complete contract of guaranty. Some point is made by plaintiff as to defendant's liability upon the original contract. While defendant, by the telegram of May 14, 1906, the letter confirmatory thereof of the same date, and the general circumstances attending the transaction, assumes to speak in his own name, nevertheless, plaintiff knew of his relation to the Milwaukee Leasing Company. He directed his correspondence to Mr. Tarbet, the superintendent of the company, and was aware of the fact that defendant was speaking for his company. We do not deem the position of plaintiff in this behalf well taken. The record, however, discloses the fact that defendant was placed in full possession of every step of the negotiations. He was advised that plaintiff was working upon the mill, and that, as matters stood at the time plaintiff's letter of May 17, 1906, was written, the Milwaukee Leasing Company, so far as the complaint discloses, was obligated to pay cash for the mill on delivery. The request for extension of time, and the guaranty, were parts of the same letter, made at the time when the contract was still executory. Plaintiff's proposition in the letter of May 17th covered both the fixing of the time of payment and the guaranty. Here there was clearly a good and valuable consideration necessarily inferred. The facts are such as to take the case out of both the statutes of Wisconsin and Colorado.

With reference to the giving of notes and the transactions incident thereto, it is the well-established rule of law that those acts did not constitute payment of the original account, or release defendant from his liability under his contract of guaranty. Matteson v. Ellsworth, 33 Wis. 488, 14 Am. Rep. 766; Willow River Lumber Co. v. Luger Furniture Co., 102 Wis. 636, 78 N. W. 762; Crocker v. Huntzicker, 113 Wis. 181, 88 N. W. 232; First National Bank of Pueblo v. Newton, 10 Colo. 161, 14 Pac. 428; Union Gold Mining Co. v. Rocky Mt. National Bank, 2 Colo. 565; The Kimball, 3 Wall. (70 U. S.) 37, 18 L. Ed. 50.

The complaint offers to bring in the notes, and prays for judgment on the contract of guaranty. We are of the opinion that on its face the complaint states a good case, and the demurrer should have been overruled.

The judgment of the Circuit Court is reversed, with directions to overrule the demurrer.