DAVIS v. McEWEN BROS.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1912.)

No. 1,950.

1. EVIDENCE (§ 211*)—ADMISSIONS—TESTIMONY IN PRIOR SUIT.

Where defendant had been active in prosecuting a prior suit to establish a lien as security for a debt owing to plaintiff, defendant's evidence introduced in that suit, containing admissions of facts in issue relating to the performance of plaintiff's contract, which resulted in the debt on which the subsequent action was brought against defendant, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 738–744; Dec. Dig. § 211.*]

2. BILLS AND NOTES (§ 462*)—COMPLAINT—REQUISITES.

A complaint on a note alleging possession, ownership, and nonpayment, and setting out the note containing an ackowledgment of value received, etc., was not objectionable for failure to anticipate and negative possible defenses.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1444–1473; Dec. Dig. § 462.*]

3. GUARANTY (§ 85*)—COMPLAINT—SUFFICIENCY.

Where a complaint on a guaranty alleged the writings constituting the same by their tenor, the terms of which imported a consideration, and further alleged the necessary jurisdictional facts, the relation of the parties, the making of the contract, its modification, plaintiff's performance, the request for, giving and acceptance of the guaranty, and nonpayment of the debt for which it was given as a security, it was sufficient.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 99; Dec. Dig. § 85.*]

4. APPEAL AND ERROR (§ 1008*)—WAIVER OF JURY—FINDINGS OF COURT.

A jury having been waived, the findings of the court have the same efficacy as a verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3969; Dec. Dig. § 1008.*]

5. WITNESSES (§ 240*)—EXAMINATION—FORM OF QUESTIONS.

A question, asking defendant to state whether or not he ever made and delivered to plaintiff a promissory note set forth in the first cause of action, in the amended complaint, filed, etc., was properly excluded as leading and calling for a conclusion of the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 795, 837–845; Dec. Dig. § 240.*]

6. BILLS AND NOTES (§ 119*)—EXECUTION—IDENTITY OF PAYEE.

Defendant executed a note to plaintiff for part of a debt, at a time when he knew that he was responsible for the payment thereof as a guarantor. Plaintiff corporation was then existing, and by a valid assignment was the holder of the guaranty and entitled to receive payment of such debt, and defendant intended to give the note as a substitute, pro tanto, for his obligation under the guaranty. *Held*, that defendant's liability on the note was in no manner affected by the fact that at the time he gave it he did not know that plaintiff was a corporation and had succeeded to the ownership of the debt by assignment from the partnership to which the guaranty was executed.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 255–259; Dec. Dig. § 119.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. APPEAL AND ERROR (§ 1041*)—PLEADING—AMENDMENT—PREJUDICE.

In a suit on a note and a guaranty of payment for certain machinery sold by plaintiff's assignor to a corporation, an allegation that both of the agreements between the parties modifying the original agreement were made and entered into prior to April 27, 1900, was not material, and hence an order allowing the allegation to be added by amendment after the introduction of the evidence was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4106–4109; Dec. Dig. § 1041.*]

8. GUARANTY (§ 78*)—COUNTERCLAIM—EXPENSES OF LITIGATION.

Where certain litigation was instigated and carried through by a guarantor for his own benefit, he was not entitled to the allowance of a counterclaim for the expenses of such litigation in attempting to establish a lien in favor of the creditor, which culminated in a judgment in favor of the creditor against the debtor corporation which remained unsatisfied.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 91, 92; Dec. Dig. § 78.*]

9. APPEAL AND ERROR (§ 173*)—ASSIGNMENTS OF ERROR—ISSUES.

Defendant could not assign that the court erred in not allowing a credit to defendant for one half of a debt because plaintiff looked to another for the other half of the obligation and had accepted defendant's note in full for his half, where no claim for a credit on account of the guaranty, by reason of the liability of the co-guarantor, was made in the pleadings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1120; Dec. Dig. § 173.*]

10. GUARANTY (§ 16*)—CONSIDERATION.

Where a guaranty was executed to secure further delivery of goods to a corporation, the actual delivery of the materials constituted a valid and sufficient consideration for the guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 14–17; Dec. Dig. § 16.*]

11. GUARANTY (§ 7*)—ACCEPTANCE—NOTICE.

Plaintiff, before shipping certain machinery to a corporation, required defendant and another to guarantee payment and, in reply to a letter inclosing a contract of guaranty, stated that plaintiff thanked defendant for guaranteeing the account and would suggest a settlement in cash if possible, otherwise by note for three months with interest, executed by the corporation and indorsed by the guarantors, bearing a specified date, adding that plaintiff had hurried shipment of the balance of the material as fast as possible after defendant guaranteed the account. Held, a sufficient notice of plaintiff's acceptance of the guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 9; Dec. Dig. § 7.*]

12. GUARANTY (§ 59*)—CONTRACT—MODIFICATION.

Where a guaranty did not by its terms make it conditional, so that its obligation would attach only on complete fulfillment of the original contract to furnish certain machinery to a corporation, but by the terms of the guaranty the guarantors assumed responsibility for payment within a specified time after delivery of the goods, such delivery specified the only condition precedent on which the obligation was made to depend, and hence the fact that the corporation accepted part performance with an abatement of the price did not release the guarantors.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 69; Dec. Dig. § 59.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

13. GUARANTY (§ 66*)—DISCHARGE OF GUARANTOR—LIEN—DELAY IN FILING.
  Where a guarantor's delay in filing an application for a mechanic's lien to secure the debt guaranteed was not caused by any fault on the part of the creditor in concealing facts or failing to communicate true information, but rather by the guarantor's mistake as to the date from which the time for filing notice of a lien began to run, his failure to file such notice in time to secure a lien was no defense to his liability as a guarantor.

  [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 76; Dec. Dig. § 66.*]

In Error to the Circuit Court of the United States for the District of Montana.

Action by McEwen Bros., a corporation, against John E. Davis. Judgment for plaintiff, and defendant brings error. Affirmed.

In an action at law upon two separate causes of action, the Circuit Court for the District of Montana rendered a judgment in favor of the plaintiff, a New York corporation, now the defendant in error, for the sum of $3,-933.67. The first count of the complaint sets forth a cause of action for money due upon a promissory note, and the second states a cause of action for the balance of a debt of the Montana Pulp & Paper Company, a Montana corporation, for which the defendant in the action, now plaintiff in error, became liable by a written contract of guaranty. To reverse that judgment the case has been brought to this court by a writ of error.

The history of the case is as follows: In September, 1899, the Montana Pulp & Paper Company, being then engaged in the construction of a paper manufacturing plant at Manhattan in the state of Montana, received from a copartnership styled "McEwen Bros." a written proposal to furnish part of the equipment required for said paper mill, f. o. b. cars at Wellsville, N. Y., specifying prices for said materials, consisting of steel tanks with accessories and a strainer; the tanks to be sent from Wellsville in knockdown form and to be set up, and the plates riveted together, after arrival at Manhattan; the M. P. & P. Co. to notify the manufacturer when the materials arrived and to pay traveling and other expenses of men to be sent from Wellsville to Manhattan to complete the tanks and to pay all freight charges. That proposal was immediately accepted unconditionally. The executory contract, thereby entered into, contained no provision fixing the time of payment: but afterwards, by letters, McEwen Bros. proposed additions to and modifications of the contract providing that payments for the materials should be $1,588 immediately, $1,500 when the materials should be ready for shipment, and a final payment of $1,500 when the tanks should be set up and completed in the paper mill; that some of the specified gears and equipment should be omitted for which a deduction of $271 should be made from the contract price; and that the manufacturers should be relieved from the requirement to send workmen to rivet the tanks at Manhattan for which a further deduction of $250 from the contract price should be allowed. To these proposed additions and modifications the M. P. & P. Co. acquiesced. In the month of February, 1900, the M. P. & P. Co. paid to McEwen Bros. on account of the contract the sum of $1,500, and no other payment has been made. In January, February, and March, 1900, McEwen Bros. wrote letters expressing lack of confidence in the financial responsibility of the M. P. & P. Co. At that time Mr. Henry Altenbrand was president, and Mr. Davis, the plaintiff in error, was treasurer, of said company. On April 11, 1900, McEwen Bros. wrote a letter to Mr. Altenbrand containing a specific demand for security, saying:

"We will have to insist that the treasurer, Mr. Davis, and you sign a guaranty that you will send us cash for the payment that is due when the tanks are shipped, or if you cannot make a cash payment we will take a

three months note with interest, signed and guaranteed by you and the treasurer of the company, Mr. Davis."

In response to that demand Mr. Altenbrand on April 12, 1900, wrote a letter to McEwen Bros. complaining of delay in forwarding the tanks and containing a specific promise as follows:

"I leave here Monday for Montana and I will have a note forwarded to you at once, as you request, so please ship the tanks at once."

The guaranty sued upon was mailed to McEwen Bros. April 28, 1900, and is of the following tenor:

"McEwen Brothers, Wellsville, N. Y.—Gentlemen: Inclosed please find guaranty for your account with the Montana Pulp & Paper Company, signed by Mr. Altenbrand and myself, which I hope you will accept and forward the tanks without further delay.                    J. E. Davis.

"Manhattan, Montana, April 27, 1900.

"McEwen Brothers, Wellsville, N. Y.—Gentlemen: As you have requested a guaranty from Mr. Henry Altenbrand and Mr. J. E. Davis, for payment of the balance of your account, about $3,000, now, we, therefore herein agree to be responsible for the payment of your account within three (3) months after the delivery of goods, with interest at six (6) per cent.

"Yours truly,            John E. Davis.   Henry Altenbrand.
"Witness as to Henry Altenbrand: M. R. Kennedy."

The manufacture of the materials contracted for was completed, and all not previously shipped were loaded on cars at Wellsville and forwarded to the M. P. & P. Co. some time between the end of May and the 8th day of June, 1900, and were received by the M. P. & P. Co. at Manhattan, on the 18th day of June, 1900, and the tanks were thereafter completed and set up in the paper mill. McEwen Bros. neglected to acknowledge receipt of the guaranty until June 11, 1900, on which date they wrote a letter to Mr. Davis, the plaintiff in error, in which, referring to an inclosed copy of their account against the M. P. & P. Co., they said:

"* * * We thank you for guaranteeing this account, we would suggest a settlement for this account in cash if possible, otherwise a note for three months with interest given by the company and indorsed by you and Mr. Altenbrand and bearing date June 7, 1900. We hurried up shipment of the balance of the tanks as fast as possible after you guaranteed the account. * * *"

June 18, 1900, plaintiff in error wrote a letter to McEwen Bros. acknowledging receipt of their letter of the 11th, in which he did not complain of delay on their part in giving notice of acceptance of the guaranty, nor give any hint of disputing his liability, and in a number of letters subsequently written he expressly acknowledged his liability and promised to make the guaranty good. In the month of September, 1900, acting under authority requested by him and given by McEwen Bros., he, as their agent, filed a lien upon the paper mill for the balance due on the account for the materials furnished under the contract, and afterwards, as agent, prosecuted a suit, in the names of the copartners as plaintiffs, to foreclose said lien. The court in which the foreclosure suit was commenced rendered a decree in favor of the plaintiffs establishing the lien. On an appeal, taken by a mortgagee contesting the lien, the Supreme Court of Montana reversed the decree establishing and foreclosing the lien and ordered the case dismissed as to the mortgagee, but allowed a judgment for the amount due in favor of the plaintiffs and against the M. P. & P. Co. which remains uncollected; an execution having been issued and returned nulla bona. In the month of December, 1900, the copartnership of McEwen Bros. was dissolved by the death of one of its members, and a corporation called "McEwen Bros." was thereupon organized which became the successor of the copartnership, received an assignment of the partnership assets, and continued the business under that name. The plaintiff in error was not informed and did not know of the change in the organization until some time in the year 1903, during the pendency of the foreclosure suit. In the month of May, 1901, the plaintiff in error, acting without knowledge of the organization of said

corporation, executed a promissory note to "McEwen Bros." for one-half of the balance due on the contract price for the materials, and it was received by the defendant in error, and accepted by a letter dated June 21, 1901, containing a notice in the following words:

"The acceptance of your note does not release you from the balance of the account, but we will do all we can to get Mr. Altenbrand to pay the other portion of the account long due."

The plaintiff in error, being still ignorant of the change in said organization, executed a renewal note dated November 7, 1901, for the same amount and paid the accrued interest which was received by the defendant in error, and the first note was canceled and returned. Said renewal note is the note upon which the first cause of action in the complaint in this case is based; and the amount demanded in the second cause of action is one-half of the account for which the plaintiff in error and Henry Altenbrand assumed responsibility.

The defenses pleaded in the answer filed by plaintiff in error consist of:

(1) A partial traverse of the complaint.

(2) A first affirmative defense comprising a group of special pleas in avoidance of liability.

(3) A further affirmative defense and counterclaim, alleging the acts of the plaintiff in error as agent in filing a lien and prosecuting a suit for the foreclosure thereof and obtaining a judgment and the expenditure of his own money in said proceeding for which he has not been reimbursed.

By a written stipulation the parties waived a jury, the court tried the case, and made specific findings of facts and conclusions of law which were incorporated into the judgment. The alleged errors of the court relied upon for reversal of the judgment and set forth in the assignments of error are as follows:

(1) Error in overruling a motion to strike all of the testimony of a stenographer purporting to recite testimony given by the plaintiff in error in the trial of the suit to establish and foreclose a lien upon the property of the M. P. & P. Co., because irrelevant and immaterial.

(2) Error in overruling objections of the plaintiff in error to the introduction of any testimony to sustain the allegations of the complaint for the reason that there is no basis upon which any evidence can be offered on the part of the plaintiff (defendant in error) to sustain any of the allegations as to either the first or second counts of the complaint.

(3) Error in overruling a motion to strike from the record all of the testimony introduced in the case on the part of the plaintiff (defendant in error) for the reason that no evidence whatever was introduced "to substantiate any valid subsisting guaranty on the part of the defendant" (plaintiff in error).

(4) Error in sustaining an objection to the following question asked of the plaintiff in error as a witness in his own behalf: "Q. State whether or not you ever made and delivered to the plaintiff in this action a promissory note set forth in the first alleged cause of action stated in the complaint, in the amended complaint, filed in this action on February 17, 1908."

(5) Error in sustaining a motion to amend the complaint by inserting the following additional allegation: "That both of the said agreements between the said parties, so modifying the said original agreement, were made and entered into prior to the 27th day of April, 1900."

(6) Assignments 6, 7, 8, 9, and 10 are all for alleged errors in the court's conclusions of law based upon its findings of facts.

(7) Assignments 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 are all, for alleged errors in findings of facts, specifically referred to, for the reason that there was no evidence introduced at the trial to sustain the same.

(8) Assignment 21 is for alleged error of the court in making its findings of fact and conclusions of law in favor of the plaintiff and against the defendant and in entering judgment in accordance therewith for the reason that the evidence in the cause is insufficient to justify or support the said findings and conclusions or the said judgment.

(9) Assignment 22 is for alleged error in disallowing the counterclaim pleaded in the answer.

(10) Assignment 23 is for alleged error in the failure of the court to give credit in favor of the plaintiff in error for one-half of the debt guaranteed for which the defendant in error should look to Mr. Altenbrand, the co-guarantor.

(11) The two remaining assignments are general and do not merit special consideration.

E. N. Harwood, George F. Shelton, and Charles A. Ruggles, for plaintiff in error.

John A. Shelton, for defendant in error.

Before GILBERT, Circuit Judge, and HANFORD and WOL-VERTON, District Judges.

HANFORD, District Judge (after stating the facts as above).
[1] The first assignment of error relates to testimony given by the plaintiff in error on the trial of a case which he was active in prosecuting to establish a lien as security for the debt involved in the present action, and was admissible in evidence because it contained important admissions by him of facts in issue relating to the performance of their contract by McEwen Bros., copartners. Therefore it was not error to overrule the objection to that evidence.

[2] The objection to the introduction of any evidence referred to in assignment 2 was an attack upon the complaint upon which issues had been joined by the answer and raised only questions which might have been raised by a demurrer. The specific grounds for disputing the sufficiency of the complaint are that it fails to set forth any consideration for the alleged guaranty, fails to show that any guaranty was entered into that could apply to the account sued on, fails to show that McEwen Bros. complied with the terms and conditions of their contract, and lacks pertinent allegations to evade the specific defense of failure and lack of consideration for the promissory note.

The complaint sets forth the promissory note by its tenor. The note contains an acknowledgment of value received. There is no omission of formal allegations of jurisdictional facts and of possession and ownership of the note and nonpayment. Therefore the note as it is pleaded is prima facie valid, and it was not necessary for the pleader to anticipate and negative possible defenses. Therefore the first count of the complaint is not defective as a statement of facts sufficient to constitute a cause of action.

[3] In stating the second cause of action the complaint sets forth the writings constituting the guaranty by their tenor, the terms of which import a consideration, and is full and complete in alleging the necessary jurisdictional facts, the relationship of the parties, the making of the contract, its modification, performance of their undertaking by McEwen Bros., the request for, giving and acceptance of the guaranty, and nonpayment of the debt for which it was given as a security. Considered by itself alone, the guaranty would be ambiguous and uncertain as to the debt intended to be secured; but as a link in a chain of facts, as it is pleaded, its applicability to a particular debt is certain. Therefore we hold that the complaint is

not deficient, and that the objections to the introduction of evidence to sustain it were properly overruled.

[4] Assignments 3 and 11 to 21, inclusive, merely challenge the sufficiency of the evidence to sustain the complaint and contradict the court's findings of facts. A jury having been waived, the findings of the trial court have the same efficacy as a verdict. The findings determine, conclusively, all controverted questions of fact unless unsupported by competent evidence. After having read the evidence studiously, we affirm that the findings in this case as to every material fact are well supported by evidence, and they are adopted as the premises upon which our conclusions must rest. Nevertheless, to elucidate some of the points, reference will be made in this opinion to certain items of the evidence.

[5] The question referred to in assignment 4, which has been quoted in the statement preceding this opinion, is obviously obnoxious to an elementary rule governing the introduction of evidence which prohibits the propounding of leading questions in the examination in chief of a witness, and for that reason the court did not err in sustaining the objection to it on the ground that it called for a conclusion. There is another sufficient reason for approving that ruling. An affirmative answer to that question would have added unnecessary cumulative evidence adverse to the plaintiff in error, and a negative answer would have been a transparent prevarication that would not have been of any advantage to him. He was permitted to testify that he had no information or knowledge of the existence of a corporation named "McEwen Bros." until a time subsequent to the execution and delivery of the note, and that fact is the supposed basis for a denial of the execution and delivery of the note.

[6] When the note was given, the plaintiff in error knew that, as a guarantor, he was responsible for the payment of a debt; the corporation was then existing and by a valid assignment was then the holder of the guaranty and entitled to receive payment of that debt; the defendant in error intended to give a note as a substitute pro tanto for his obligation under the guaranty, and with that intention he did sign the note and did transmit it by mail addressed so that possession of it was transferred from him to the corporation. The proposition that, the plaintiff in error being ignorant of the facts that the corporation existed and was the holder of his guaranty, the note which he signed is not a note, and the transfer of possession of it from him to the corporation was not a delivery, is sophistical. In legal effect the transaction is similar to one in which a contract made and entered into, whereby one party dealing with an agent, in ignorance of the agency, becomes obligated to an undisclosed principal. In such a case the law does not avoid the obligation, but entitles the principal to enforce it. 1 Am. & Eng. Enc. of Law (2d Ed.) 1168. 1169, 1170; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. 380. 12 L. Ed. 465; Ford v. Williams, 21 How. 287, 16 L. Ed. 36; Darrow v. Produce Co. (C. C.) 57 Fed. 463.

The actors who were pressing the plaintiff in error to meet his obligation under the guaranty, and who received and accepted the

note, were agents of the corporation which was the holder and legal owner of the guaranty, the plaintiff in error intended to give a valid note, he would not have acted differently if he had been informed that his guaranty had, by assignment thereof, become the property of McEwen Bros., a corporation, and we hold that the relationship of the corporation to the transaction is that of an undisclosed principal; that it was apparently and legally the payee, as well as the actual holder of the note when this action was commenced; and that the plaintiff in error is legally obligated to pay it.

[7] It is the opinion of this court that the allegation in the amendment to the complaint referred to in the fifth assignment is not material, and for that reason the order of the court allowing the amendment to be made after the introduction of the evidence upon the trial was, at the most, a harmless error.

What will be said in this opinion touching the grounds of defense relied upon in the arguments of counsel will be the decision of this court of all questions involved in the conclusions of law referred to in assignments 6, 7, 8, 9, and 10, and in the general assignments numbered 24 and 25.

[8] Assignment 22 alleges error of the trial court in disallowing the counterclaim for expenses of litigation in attempting to establish a lien which culminated in a judgment in favor of McEwen Bros. against the M. P. & P. Co. which remains unsatisfied. That litigation was instigated and carried through by the plaintiff in error for his own benefit, and it would impair the rights of the guarantee to saddle upon it the expenses of litigation for the collection of a debt which the plaintiff in error was obligated to pay.

[9] Assignment 23 alleges error of the trial court in not allowing a credit in favor of the plaintiff in error for one-half of the debt for the reason that the plaintiff (defendant in error) "looked to Altenbrand for his half of the obligation and accepted the promissory note of Davis in full for his half thereof." No claim for a credit on account of the guaranty, by reason of liability of the co-guarantor, can be found within the issues made by the pleadings, and it is not permissible to raise new issues in the assignments of error.

The defenses to the action urged in the arguments are multifarious. It is contended that there was no consideration for either the guaranty or the promissory note; that the guaranty was not accepted; that notice of acceptance of the guaranty was not given immediately to the guarantors; and that the guarantee did not complete performance of the contract in full compliance with its original specifications. Upon all of these grounds it is insisted that no obligation attached to the guarantors. Inconsistently with a plea of non est factum, it is also contended, in avoidance of liability under the guaranty, that both of the guarantors were released, as a legal consequence of the negligence of McEwen Bros. in failing to inform the plaintiff in error that the contract had been modified and fulfilled, as modified, by delivery of the materials to the carrier on or prior to the 8th day of June, 1900, because by withholding that information he was misled and lulled by a false assurance of safety, so that he delayed to file

the notice and claim of lien in time to make it effective, and by the lapse of time a valuable security which would have been available for the protection of the guarantors was sacrificed; that the contract was materially changed in its terms subsequently to the date of the guaranty without the consent of the guarantors, and the legal effect of such modification of the contract is to release the guarantors from their obligation. It is also contended that by acceptance of the note, and by promises made to enforce the guaranty against the co-guarantor, the plaintiff in error was released from liability under the guaranty and remained obligated only for the amount of his note. And, finally, it is contended that the findings made by the trial court are inconsistent and insufficient to support the judgment.

[10] When the guaranty was given, the contract between McEwen Bros. and the M. P. & P. Co. was executory. In demanding security for payment before incurring additional expense in the manufacture of the materials required to fulfill their contract, McEwen Bros. exercised ordinary business prudence, their demand was not unreasonable, and it was necessary to comply with it in order to avoid a controversy and delay in the performance of the contract, which would have been injurious to the M. P. & P. Co. In view of those conditions, the guaranty was given for the accommodation of the M. P. & P. Co. and was effective in relieving that concern from embarrassment, because possible vexatious contentions were avoided and the materials were delivered by McEwen Bros., without receiving full payment of the contract price therefor, in reliance upon it as a basis of credit. The consideration contemplated by the guarantors, as expressed in the guaranty itself, was a future delivery of goods, and we hold that the actual delivery of the materials constituted a valid consideration. McFarlane v. Wadhams, 176 Fed. 82, 99 C. C. A. 602.

[11] The letter of McEwen Bros. to the plaintiff in error dated June 11, 1900, the material part of which is quoted in the preceding statement, cannot be misconstrued as a notice of rejection of the guaranty. The plaintiff in error did not misunderstand it. His response to it is conclusive evidence that he deemed it to be a sufficient and timely notice of acceptance of the guaranty and of performance of the contract in reliance upon it. It served the purpose of a notice, and that which proved to be actually sufficient, fulfilled all requirements of the law, as to acceptance and notice thereof.

[12] Whether the contract was, or was not, modified previous to the date of the guaranty, the M. P. & P. Co. had the right to accept part performance of the original contract with an abatement of the price, and did so. By receiving the materials as delivered, the M. P. & P. Co. incurred a debt for the unpaid part of the price, and it is for the payment of that debt that the guarantors promised to be responsible. The guaranty contract does not, by its terms, make it conditional, so that its obligation would attach only upon complete fulfillment of the original contract. On the contrary, by its terms the guarantors assumed responsibility for payment within a specified time—"after delivery of goods." Therefore delivery of the materials

fulfilled the only condition precedent, upon which the obligation of the guarantors was made to depend.

[13] Delay in filing the lien notice was not caused by any fault on the part of McEwen Bros., in concealing facts or failure to communicate true information to the plaintiff in error. That document was verified by the plaintiff in error himself, and it states that a lien was claimed for materials delivered on the 18th day of June, 1900. That is the date on which the materials were received at Manhattan. In their letter to him dated June 11, 1900, to which he made response under date of June 18, 1900, McEwen Bros. informed the plaintiff in error that they had "hurried up shipment of the balance of tanks as fast as possible after you guaranteed the account." These letters proved that he, necessarily, knew that the materials had been shipped from Wellsville prior to June 11th, so that he could not have been misled by the withholding of true information as to the date from which time would commence to run against the right to file a lien. By the decision of the Supreme Court of Montana, it appears that the lien was defeated by computing the time within which the notice should have been filed, from the date of delivery of the materials to the carrier at Wellsville, and the lapse of more than 90 days between that date and the date of the filing. McEwen Brothers v. Union Bank & Trust Co., 35 Mont. 470, 90 Pac. 359.

The record does not contain any allegation in pleading or proof of an agreement, express or implied, to release the co-guarantor from any part of his obligation, nor to accept the promissory note given by the plaintiff in error for one-half of the debt and not exact from him fulfillment of his obligation for the whole debt; on the contrary, by their letter acknowledging receipt of the first note given in May, 1901, McEwen Bros. informed him in clear and explicit terms that he would still be held to his obligation as guarantor of the whole debt.

The findings are articulated in 22 paragraphs, and, without extending the length of this opinion by a detailed analysis, we deem it sufficient to say that they appear to be comprehensive and positive in the statement of all the material facts essential to support the judgment and to be free from contradictions or inconsistent statements.

On consideration of the whole case, it is the opinion of the court that the record discloses no error of the trial court for which the judgment should be reversed. Therefore it is affirmed.