### COGGEY et al. v. BIRD.

(Circuit Court of Appeals, Second Circuit. December 10, 1913.)

No. 56.

1. CONSPIRACY (§ 21*)—FRAUD—EVIDENCE—QUESTION FOR JURY.

An action to recover damages for an alleged fraudulent conspiracy to defraud plaintiff by inducing her by false and fraudulent representations to purchase a quantity of books comprising · so-called de luxe editions of various standard authors *held* to warrant a submission of the case to the jury as against all the defendants.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 28, 29; Dec. Dig. § 21.*]

2. CONSPIRACY (§ 13*)—CIVIL LIABILITY—FRAUD OF HUSBAND—LIABILITY OF WIFE.

Where a husband, who is general manager of a corporation, all of the stock of which was owned by the wife, concocted and carried out a fraudulent scheme to induce plaintiff to purchase a large quantity of alleged de luxe editions of standard authors, and the wife testified that her husband talked over all business with her in relation, among other things, to all sales, and she did not take the stand to deny or qualify such admission, the facts were sufficient to sustain a finding that she had knowledge of the fraudulent scheme and participated in it and was liable to plaintiff, for the damages sustained.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 14; Dec. Dig. § 13.*]

3. APPEAL AND ERROR (§ 173*)—EXCEPTIONS IN TRIAL COURT—NECESSITY.

An objection that a trustee could not be sued for tort in his representative capacity, and that a judgment for such tort could not bind

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the estate of which he is trustee, cannot be considered on a writ of error, where there was no exception raising that question in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig § 173.*]

4. PLEADING (§ 397*)—ISSUES AND PROOF—VARIANCE—DAMAGES.

Where plaintiff, in an action for fraudulent conspiracy in selling her certain de luxe editions of standard authors, sought to recover the full purchase price, but the court held that she was only entitled to recover the difference between such price and the value of the books, which were shown to be worth $4,009, there was no variance between the pleading and proof under the rule that no such variance exists, when the proof merely shows that plaintiff asserted that her damages were greater than she was able to prove.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1337; Dec. Dig. § 397.*]

.5. COURTS (§ 323*)—FEDERAL COURTS—JURISDICTION—PARTIES.

Federal jurisdiction, in a case for fraudulent conspiracy, was not ousted because two of the defendants were never served and there was no proof of their citizenship, when it appeared that they were not necessary parties and without them there were at least three conspirators left whose citizenship was such as to give the court jurisdiction of the controversy.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 885, 886; Dec. Dig. § 323.*]

6. EVIDENCE (§ 135*)—SIMILAR TRANSACTIONS—INTENT.

In an action for damages arising out of an alleged fraudulent conspiracy, evidence as to other similar transactions, where other persons have been swindled by like devices, was admissible on the question of defendant's intent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 392, 394, 404, 405; Dec. Dig. § 135.*]

7. EVIDENCE (§ 207*)—SWORN ADMISSIONS—OTHER PROCEEDING.

In an action for fraudulent conspiracy to defraud plaintiff by selling her a quantity of de luxe editions of standard authors, testimony of two of the defendants, taken in supplementary proceedings in the state court, tending to show ownership of stock in defendant corporation and the financial and business relations of the parties, was admissible as sworn admissions and relevant to the subject of the controversy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 707–712; Dec. Dig. § 207.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a judgment of the District Court, Southern District of New York, entered upon the verdict of a jury in favor of defendant in error against James J. Farmer, individually and as trustee for Clara G. Farmer (his wife), Clara G. Farmer, and the Anglo-American Authors' Association, Incorporated. The verdict was for $42,977.66. The complaint charged a fraudulent conspiracy, contrivance, and plan entered into by the defendants whereby plaintiff was defrauded, being induced by false and fraudulent representations to purchase a large quantity of books comprising so-called editions de luxe of various standard authors. The price which she was induced to pay for them was enormously in excess of their real value; she yielded up $47,650 for books which the evidence showed were

*For other cases see same topic & §.NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

worth at the utmost but $4,009. The complaint charged that the Kellar-Farmer Company was a party to the fraud, and its receiver was made a defendant. In the course of the proceeding he was dropped from the case, although his name still appears in the title. The other parties charged with thus defrauding the plaintiff are the three against whom judgment was entered and also Glen A. Farmer (a son of John J. and Clara G.), Sam Warfield (who was represented and represented himself to plaintiff as one Thomas, the alleged representative of a mythical man in Connecticut who was said to be getting up a library), and Sam Rosenfeld. The last three were not served with process.

The details of the process by which the plaintiff, a lady living in Salt Lake City, was swindled out of this large sum of money need not be recited. The scheme was an ingenious one, carried out by a succession of the grossest falsehoods repeated to her by Glen Farmer, Warfield, and Rosenfeld. The contention of the plaintiff was that this scheme was concocted by or participated in by the defendants, who did not come into contact with herself, viz., John J. Farmer, Clara G. Farmer, and the Anglo-American corporation which furnished the books. Of this corporation Clara G. was substantially the sole stockholder, and John J. Farmer president and general manager.

Stanchfield & Levy, of New York City, for plaintiffs in error.

Herrick, Breckinridge & Carney, of New York City (Frank J. Gustin, of Salt Lake City, Utah, and P. W. Carney, of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1] The main contention of defendants is that the evidence did not warrant the submission of the case to the jury. Since there are three different defendants covered by the verdict, this contention is really threefold.

As to John J. Farmer. An important witness called by plaintiff had been office boy and stenographer with John J. when the latter was with the Kellar-Farmer Company and with the Anglo-American Company. It is contended that this witness was hostile; that he had made an affidavit (he explained the circumstances under which it was made) contradictory of his statements on the stand; and that he was wholly unworthy of credit. These contentions are not for our consideration. The jury was the one to pass upon his credibility. Manifestly they believed his narrative of what he had seen and heard. Accepting his narrative there is nothing left to J. J.'s exception to the refusal to direct a verdict in his favor. Without going into details it will be sufficient to refer to a part only of his testimony. He said that at J. J. Farmer's direction he wrote letters upon foreign letter heads, Paris, Vienna, Berlin, etc., addressed to some one in the office. These letters were taken abroad, mailed there, and upon receipt here were given by J. J. to some of the agents he sent out to be shown to the persons they might solicit to buy. He further testified to conversations which he heard between J. J. Farmer, Glen Farmer, and Sam

Warfield in the office of the Anglo-American Company, in one of which Glen Farmer, referring to the sales of some of these books to plaintiff, said to his father, "Sam worked the same old game and I got in under it." Taking the testimony of this witness, whom the jury have found truthful, in connection with all the other evidence in the case, the concoction and execution of the alleged scheme to defraud plaintiff .was abundantly proved against John J., Glen Farmer, Warfield, and Rosenfeld.

As to Clara G. Farmer. The mere circumstance that she owned all the stock of the Anglo-American Company would not be sufficient to show her participation in fraudulent practices to effect sales of books. But there was evidence of her own sworn admission to the effect that her husband, who was the general manager, "talked over all business (with her) in relation (among other things to), all sales." She did not take the stand to deny or qualify this admission; there was evidence that she kept herself advised as to the business generally; and there was sufficient to warrant the jury in finding that such business was so rank a swindle that she could not have kept at all in touch with it without knowing of its crookedness. Whether she had such knowledge and participated in the fraud was a question for the jury.

As to the Anglo-American Company. Clara G. was the sole owner; John J. was the manager. Their knowledge was the knowledge of the corporation, which itself received the proceeds of the fraud.

As to these three defendants, plaintiff was entitled to go to the jury, and their finding is conclusive on the evidence.

[3] As to the verdict and judgment against "John J. Farmer, as trustee of Clara G. Farmer." It is contended that, although he cannot avail of his trusteeship to escape personal liability for his own tortious acts in administering the trust, he cannot under well-settled principles be sued for tort in his representative capacity, nor can a judgment for such tort bind the estate of which he is trustee. There is no exception however which raises the point. Defendant asked the court to charge that, before they could find for the plaintiff, they must find that the conspiracy included as one of the conspirators John J. Farmer individually and as trustee for Clara G. Farmer and as an officer of the Anglo-American Company. At the close of plaintiff's case defendant counsel made a general motion to dismiss; no grounds being stated. This was "overruled for the time"; no exception being taken and defendant's evidence put in. As the close of the case, the motion to dismiss (evidently the general motion) was denied; no exception was taken. Some special motions to dismiss on stated grounds as to all the defendants were then made and denied. Then defendant's counsel said, "I ask the complaint be dismissed as against J. J. Farmer personally and as against Clara G. Farmer." This motion to dismiss was denied and exception given. So far as the record shows, the point now relied on was not called to the court's attention and no motion to dismiss to J. J. Farmer as trustee was made.

Had the verdict not included Clara G. Farmer, the cestui que trust, the failure to make such motions and to except to its refusal might have been prejudicial to her interest; but as the judgment binds her,

who is the sole person interested in the estate to which J. J. holds the title, the question now presented is merely academic.

Some other propositions advanced in argument by defendants may be briefly disposed of.

[4] The recovery was for the excess price which plaintiff paid over and above the actual value of the goods. The complaint asked recovery for the full purchase price. It is insisted that there is a variance between pleading and proof; that the complaint was based on a disaffirmance of the contract, which would require tender of the books, while the proof showed an affirmance of the contract. We do not so construe the complaint nor find any variance. The complaint does not undertake to disaffirm the contract; it merely sets out the fraud and its result and asks recovery for the resulting damages. No doubt the damages claimed were manifestly excessive, being the whole amount paid for the books on the assumption that they were absolutely valueless. Presumably they were worth something as paper stock. When the proofs were taken it appeared that they were worth $4,009, so that plaintiff's damages were shown to be only the difference between these two sums; for that amount only did she recover. There is no variance between pleading and proof when the proof merely shows that plaintiff asserted that her damages were greater than she was able to prove.

[5] We find no force in the point that there is no proof of the citizenship of Warfield and Rosenfeld, defendants, who were never served. They were not necessary parties. Without them there were at least three conspirators left, with citizenship such as gave the District Court jurisdiction of the controversy.

[6] Evidence as to prior similar transactions where other persons had been swindled by like devices was admissible on the question of intent.

[7] It is assigned as error that the testimony of John J. Farmer and of Clara G. Farmer, taken in supplementary proceedings in the city court, was read in evidence. Sworn admissions of a party relevant to any subject which is being judicially investigated are of course competent. Most of this testimony was relevant, showing, as it did, the ownership of the stock and the financial and business relations of the parties. The few irrelevant and immaterial statements which thus came in (e. g., the purchase of theater tickets, etc.) are trivial and unimportant.

The remaining assignments of error call for no discussion. We find them without merit. The judgment is affirmed as to all the defendants.