## FEDERAL SURETY CO. v. CITY OF STAUNTON, ILL., for Use of McWANE CAST IRON PIPE CO.*

Circuit Court of Appeals, Fifth Circuit.
November 14, 1928.

No. 5444.

*Rehearing denied December 19, 1928. Certiorari denied 49 S. Ct. 253, 73 L. Ed. ——.

J. Kirkman Jackson and Walter S. Brower, both of Birmingham, Ala. (London, Yancey & Brower, of Birmingham, Ala., Harold Hodges, of Davenport, Iowa, and J. Kirkman Jackson, of Birmingham, Ala., on the brief), for appellant.

Jelks H. Cabaniss, of Birmingham, Ala. (Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, Ala., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. This is an appeal by the Federal Surety Company from a verdict and judgment against it as surety upon a contractor's bond, in which the only question submitted to the jury was as to the amount and value of materials furnished by the McWane Cast Iron Pipe Company to the contractor in the construction of certain public improvements for the city of Staunton, Ill.

Appellant brings up more than a hundred exceptions to various rulings of the court, grouped under some eight different headings, but the only two questions which we think deserve consideration are:

First, was the McWane Company, the furnisher of materials and a stranger to the bond, entitled to sue thereon with the aid and assistance of the city? and,

Second, did the plaintiff make due proof of the lawful execution of the bond? Under the latter heading arose also the question of the admissibility of certain answers by defendant to interrogatories propounded to it in a suit between the same parties in the state court of Alabama, wherein, under the statute of that state, it was required to affirm or deny the execution of the bond.

The city of Staunton entered into a contract with the firm of Cole & Fauber for the doing of certain extension work to its waterworks system. It contained the usual provisions, including performance of the work, "all in accordance with the plans and specifications prepared by the W. A. Fuller Company, Engineers, said specifications including the 'Notice to Contractors', 'Instructions to Bidders', 'Contractors' Proposal', 'General Specifications', and, 'Detail Specifications', which documents and each and every part thereof are incorporated in this contract by reference as fully and completely as though the same were written out at length herein."

And it was further stipulated that:

"The contractor agrees to promptly pay for all labor and materials, tools, equipment and appliances used in or in connection with the construction of said work and to deliver the entire work to the City of Staunton free of all claims, liens or incumbrances."

In the notice to bidders they were informed that:

"The successful bidder will be required to enter into a bond in a sum equal to the full amount of his contract with sureties to be approved by the City Council of the City of Staunton."

In the instructions to bidders it was provided:

"The successful bidders will be required to enter into a bond equal to the full amount of the contract, with sureties approved by the City Council, which bond shall provide that the Contractor shall and will faithfully perform and execute said work in all respects according to the complete and detail specifications, and full and complete drawings and according to the time and terms and conditions of the contract, and also such bidder or contractor shall promptly pay all debts incurred by such contractor in the prosecution of the work covered by the contract including debts incurred for labor and materials furnished."

Likewise in the general specifications it was provided:

"The Contractor will be required to furnish a bond with sureties acceptable to the Purchaser in a sum equal to the amount stated in the 'Instructions to Bidders', for the faithful discharge of all the conditions in the specifications and contract."

The condition of the bond furnished by the contractors was as follows:

"The condition of this obligation is such, that if the above bounden Cole and Fauber shall promptly construct and finish a certain improvement as described in a contract between the said City of Staunton, and the said Cole and Fauber and dated the ——— day of ———, A. D., 1926, and shall faithfully keep and perform each and every one

of the terms, agreements, provisions and conditions as provided in said contract to be kept and performed by the said Cole and Fauber and shall execute said work in all respects according to the complete and detail specifications and full and complete drawings and according to the time and terms and conditions of said contract, *and shall promptly pay all debts incurred by said Principal in the prosecution of said work including those for labor and materials furnished and shall deliver said work complete to the City of Staunton free of all liens, claims or incumbrances, then this obligation shall be void, otherwise it shall remain in full force and effect."*

■ There is some controversy as to what law should govern in the determination of defendant's liability under this bond, but we think it settled that, inasmuch as the contract and bond were entered into and to have effect in the state of Illinois, where the work was to be performed, the rights of the parties must be controlled by the laws of that state. First National Bank v. Caples (C. C. A.) 17 F.(2d) 87. See, also, Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228; Hartford Fire Insurance Co. v. C., M. & St. P. Ry. Co., 175 U. S. 91, 20 S. Ct. 33, 44 L. Ed. 84; Snare & Triest Co. v. Friedman (C. C. A.) 169 F. 1, 40 L. R. A. (N. S.) 367; and Bethlehem Iron Co. v. Hoadley (C. C.) 152 F. 735.

At the time of the execution of the contract and bond involved in this suit, while the Supreme Court of Illinois apparently had not had occasion to pass directly upon this question, the intermediate Court of Appeals, whose decisions, it was stated in argument, and not denied, are final, and without the right of review by the Supreme Court in such matters, had twice ruled in favor of the right of recovery by the furnishers of materials on similar bonds. Board of Education of the City of Chicago for the Use, etc., v. Ætna Indemnity Co., 159 Ill. App. 319; Board of Education v. Chicago Bonding & Surety Co., 218 Ill. App. 20. In both instances the condition of the bond was practically the same as the present case, and in the first (Board v. Ætna Indemnity Co.) the court, in disposing of the question, said:

"There is no statute requiring the Board of Education to take a bond from a contractor for work on a school building, conditioned to secure payment for labor or material furnished to such contractor. But the contracts between Olsen and the Board provide that he shall make prompt payment to all persons supplying him with labor or materials in the prosecution of the work called for by his contract. The condition of each of the bonds is that Olsen shall perform the contract, etc., and, 'shall promptly make payment to all persons supplying him [with] labor or materials in the prosecution of the work provided for in said contract.' The real meaning of the parties is that the obligors contract to perform the condition of the bond under the conventional sanction of a penal sum. The claims of the Lumber Company are for lumber furnished to Olsen and used in the prosecution of the work provided for in his contracts with the Board of Education, and fall clearly within the very letter of the condition of the bonds. To hold the bonds in question valid and binding is only to compel the obligors to do the thing they bound themselves to do. The distinction between these cases and Spalding Lumber Co. v. Brown, 171 Ill. 487 [49 N. E. 725], and Searles v. City of Flora, 225 Ill. 167 [80 N. E. 98], is, that in those cases the bonds contained no condition that the obligors should pay for labor or materials furnished to the contractors, and in these cases the bonds contain such conditions.

"We do not think that the contention, that because there was no statute requiring the Board of Education to take a bond for the protection of sub-contractors, the condition for their protection in the bonds in question cannot be enforced for the benefit of the Chandler Company, is tenable. City of St. Louis v. Von Phul, 133 Mo. 561 [34 S. W. 843, 54 Am. St. Rep. 695]; Knapp v. Swaney, 56 Mich. 345 [23 N. W. 162, 56 Am. Rep. 397]; Smith v. Bowman [32 Utah, 33] 88 P. 687 [9 L. R. A. (N. S.) 889]."

In the second case (Board, etc., v. Chicago Bonding & Surety Co.) it was held:

"The fact that the statute does not require the Board of Education to take a bond on letting a contract in the nature of the one in the case at bar does not relieve defendant from its contract obligation in this regard. The bond was made for the protection of sub-contractors, and Weil Brothers, as subcontractors under the principal obligor, have the right, without the consent of the Board of Education, to maintain this action to recover the amount due it from the Hanley-Casey Company; the bond is available to subcontractors for that purpose, as it was entered into for their benefit and protection.

"While the statute did not require the Board of Education to take such a bond, still it had the right to require such a bond

in the exercise of its discretion for the protection of laborers, and materialmen, and such act cannot be held to be ultra vires its power, even if the right of challenge upon this ground existed. Nor is it important to the right of action that the Board of Education was not liable to the subcontractor suing. The condition of the bond is that the principal obligor shall make prompt payment to all persons furnishing labor or materials in the prosecution of the work provided for in the contract. This is in effect and by interpretation an undertaking to pay the parties who furnished labor and material, and by operation of law such provision is for the benefit of such parties and they may maintain an action to enforce it.

"The bond is dual in its nature; it contains two promises—one to the Board of Education that the contractor shall perform the work as agreed; the other to the laborers and materialmen to pay them for labor and material they might perform or furnish to the contractor. The consideration is sufficient to support both conditions."

We think, therefore, that when the plaintiff or any other furnisher of materials or labor came to deal with the contractor, and were acquainted with the nature of the contract and bond, they had a right to assume, in view of this declaration of the law by the courts of Illinois, that they would have the benefit of protection under the bond. They, of course, would have no lien against the public property, and their only recourse would be to file their claims with the city in an effort to hold any unpaid funds in its hands. If such a course were pursued during the prosecution of the work, it would be calculated, not only to embarrass the contractor, but to delay and prejudice the possibility of completing the work for the city and the public, and such action might also be disadvantageous to the surety company and serve to enhance its liability to the city under the bond. Besides, the weight of authority seems to sustain the ruling of the Court of Appeals of Illinois. See 6 R. C. L. pp. 883, 884, verbo "Contracts," and decisions in footnote; First National Bank v. Caples (C. C. A.) 17 F.(2d) 87. If such a stipluation is not to be considered for the benefit of persons in the class of plaintiff, of what value is it in the bond? Could it be said that it was to indemnify the city in event of proceedings by such claimants against the contract price in the hands of the city and the inconvenience of the possible creation of liens on the funds in its hands? As to such contingencies, the city was protected by the general obligation guaranteeing the prompt and proper performance of the undertaking by the contractor to the extent of the penal sum of the bond. It can scarcely be said that the extent of such liability could be increased above that amount by the failure to pay materialmen and laborers; so that the provision requiring prompt payment of such claims must be allowed to have some effect, and it would seem that the only logical and reasonable one is that it is for the benefit of such persons. Being for that purpose, it would likewise appear to follow that they have a standing in court to enforce it. See Union Indemnity Co. v. State, for Use of McQueen Smith Farming Co. (Nov. 10, 1927) 217 Ala. 35, 114 So. 415, and authorities therein cited.

The original petition in this case was by McWane Cast Iron Pipe Company alone, and based upon two counts: The first, a demand for the full amount claimed as a furnisher of materials, to wit, $20,492.87, upon the theory that it had a right of action upon the bond; and, in the second count, it claimed the sum of $9,404.44, alleged to have been paid over to the surety company by the city, out of funds coming to the contractor after completion of the work.

Defendant demurred to the first count of the complaint, the substance of which was that upon its face no cause of action was disclosed, as plaintiff was a stranger to the bond, and that the city, the obligee therein, did not appear as a party plaintiff. Thereupon by amendment the city was made a party plaintiff, suing for the use and benefit of McWane Cast Iron Pipe Company. A second demurrer was filed along the same lines, and, in addition, it was urged that the bond on its face disclosed a material alteration, to wit, that it had originally been dated April 20, 1926, which had subsequently been changed to July 1st, without authorization or consent of the surety. The latter plea was overruled as to the first count, but sustained as to the second, and defendant then moved to dismiss, which motion was also overruled.

"Thereupon defendant files plea non est factum and pleads in short by consent the general issue, and issue being joined on plaintiff's complaint as amended, and defendant's plea of general issue pleaded in short by consent with leave to give in evidence any matter which if well pleaded, would be admissible in defense of the action, to have effect as if so pleaded, with leave to the plaintiff to give in evidence, any matter which if well pleaded would be admissible in reply

to such defensive matter to have effect as if so pleaded, and plea non est factum."

Plaintiff then identified by the clerk of the city council of Staunton, Ill., proceedings covering its letting of the contract, etc., with Cole & Fauber; proved that the contract had been completed, and that the balance due thereon of $9,402.44 had been paid to "R. P. Prewitt, Trustee, Federal Surety Company"; that the payment was made at the request of Prewitt, "and they in turn would pay the McWane Cast Iron Pipe Co."; that Prewitt "visited Staunton representing the Federal Surety Company from time to time during the progress of the work under this contract"; and that there was another man with him from the home of the surety company. There was also produced and identified a photostatic copy of the check for $9,402.44 by the city, payable to R. P. Prewitt, trustee Federal Surety Company, which bears indorsements, "Pay to the order of Federal Surety Company, R. P. Prewitt"; "Pay to the order of Iowa National Bank, Davenport, Iowa, Federal Surety Company"; "Paid 2—8—27." And it was further proven that this check represented "the final estimate of the amount due Cole & Fauber on this contract." There was also admitted in evidence copy of letter, as follows:

"Prewitt & Jack Insurance Agency,
Pierce Building.

"St. Louis, Mo.,   December 22, 1926.

"City of Staunton, Illinois, Staunton, Illinois—Gentlemen: In connection with the contract of Cole & Fauber for the laying of Water Mains within your City Limits, we are advised that an estimate of $9,400.00 is ready to be passed, and that you would like to forward this direct to the McWane Pipe Company, Birmingham, Alabama. As all bills for materials and supplies going into this job are covered by our bond we see no reason for objecting to this action, and therefore would request that this sum be forwarded to the McWane Pipe Company on account of balance due. Yours very truly, Federal Surety Company [Signed] R. P. Prewitt, Attorney in Fact.

"Approved: Cole & Fauber, by H. J. Fauber."

Numerous objections were made to the above evidence, which were overruled, and, without going into detail, we think it sufficient to say that in our opinion the rulings were correct.

It was then shown that it was originally contemplated that the contract and bond would be executed and delivered on April 20, 1926, and the bond was signed on that date, but that the date of the contract was left blank in the bond, to be filled in later. Subsequently, it developed that there was some defect in the proceedings of the city for the letting of the work, which were gone through again for the purposes of correction, the contract was dated July 1st, which was inserted in the bond, and the work proceeded. Some weeks later, it was discovered that the date of the bond did not correspond with that of the contract, and Prewitt, the agent and attorney of the surety company, who had originally executed the bond, indorsed on the margin a memorandum changing it to July 1st. The power of attorney in favor of Prewitt provided:

"That the said Ray P. Prewitt or Wm. A. Jack, be and are hereby fully authorized and empowered to sign the name of the Company as surety, and for it and in its name, place and stead, to do and perform the execution of any and all kinds of bonds and any and all acts and things set forth in the resolution of the Board of Directors of the said Federal Surety Company, a certified copy of which is made a part of this power of attorney.

"It being the intention of this power of attorney to fully authorize and empower the said Attorney-in-Fact to sign the name of said Company, and affix its corporate seal, as Surety, to any and all of said bonds, and thereby lawfully bind it as fully, to all intents and purposes, as if done by the duly authorized officers of said Company, with the sale of the said Company thereto affixed, and the said Company hereby ratifies and confirms all and whatsoever the said Attorney-in-Fact may lawfully do in the premises by virtue of these presents.

"Provided, however, that this Power of Attorney does not authorize, or empower, the said Attorney-in-Fact to give consent to any alterations, or changes, in terms, conditions or covenants of said Bonds when once executed, nor to any alterations, or changes, in the form or conditions of any Contract, on which this Company is Surety, nor to bind, or in any way commit the said Federal Surety Company to any course or position whatever regarding adjustment of claims or complaints that may be thereunder, or in connection with any Bond which may be executed by said Company."

From what has been thus stated, we think that, while the bond was actually signed on April 20, 1926, it was never completed

or put in force in the sense that there was any delivery or liability thereunder until the contract was closed on July 1st. It was merely an offer to the city to become surety for Cole & Fauber, which did not take effect until the negotiations ripened into an obligation upon the signing of the contract. In any event, the terms of the above-quoted power of attorney were sufficiently broad to authorize Prewitt to execute a new bond, but, in lieu thereof, he simply made the date correspond with that of the contract. Besides, the defendant is hardly in position to deny it, in view of its receipt and cashing of the check for $9,402.44, shown to have been indorsed and paid to it, as above set forth.

In addition to the above, there were admitted in evidence copies of answers by the defendant to interrogatories propounded in the case of McWane Cast Iron Company, against this defendant, filed in the state court, in which it admitted executing the bond. Objection was made to the receiving of this proof upon the ground that defendant was compelled under the Alabama statute to answer said interrogatories, which law has no application to proceedings in the federal court, and also to the form of the offering. However, we think the court below ruled correctly in admitting them, for the reason that, regardless of the statute, the judicial admissions of a party litigant are always admissible to prove prima facie an admission against interest. Under the situation produced in the state court, the answers of the defendant had the same effect as its pleadings, since, under that practice, it was permissible to narrow the issues, just as is done in patent and admiralty cases in the federal court. The answers were therefore of a higher degree of proof than mere depositions, and under the circumstances took the rank of judicial admissions prima facie, although they were not conclusive. 22 C. J. 342; Gay, Hardie & Co., v. Rogers, 109 Ala. 624, 20 So. 37; Sizer & Co. v. Melton & Sons, 129 Ga. 143, 58 S. E. 1055. See, also, Pope v. Allis, 115 U. S. 363, 6 S. Ct. 69, 29 L. Ed. 393; Lehigh R. R. Co. v. Allied Machinery Co. (C. C. A.) 271 F. 900; Cimiotti Unhairing Co. et al. v. Bowsky (C. C.) 113 F. 698; Coggey v. Bird (C. C. A.) 209 F. 803; and Davis v. McEwen Bros. (C. C. A.) 193 F. 305.

Our conclusion is that the execution of the bond was sufficiently and properly proven, as well as the amount and liability of the defendant for the claim, and that the judgment of the lower court should be, and is hereby, affirmed.